**LANDMARK CORPORATION, Plaintiff,**

v.

**APOGEE COAL COMPANY, Defendant.**

Civil Action No. 2:96–0476.

United States District Court, S.D. West Virginia.

Nov. 4, 1996.

John E. Lutz, Jr., Charleston, WV, for plaintiff.

Timothy M. Miller, Charleston, WV, for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on plaintiff's motions to remand this action to state court and for costs pursuant to 28 U.S.C.A. § 1447(c).

I.

In 1993, plaintiff and defendant entered into a contract whereby plaintiff agreed to reclaim mines owned by defendant. Plaintiff hired employees in order to reclaim the mines. Private labor contracts and federal regulations [1] acting in conjunction impose upon plaintiff monetary obligations ("Coal Act obligations") as a result of employing miners. Specifically, plaintiff is required to make payments in order to provide health benefits to miners. The amount of these payments apparently is based upon the number of employees who, after working for plaintiff, retire before working for a new employer in the mining industry. These obligations accrue until the death of the retired employee, unless the employee comes out of retirement and goes to work for a different employer in the mining industry, in which case the new employer becomes liable for the payments. Plaintiff paid $19,243.50 to the fund as a result of the employees in question as of March 31, 1996, and alleges in its complaint that damages will accrue at the rate of $1,350 per month.

Plaintiff filed an action in the Circuit Court of Kanawha County, West Virginia, on April 15, 1996. Plaintiff asserts that defendant is responsible for some of its Coal Act obligations as a result of the portion of their contract that states that "[defendant] agrees to be responsible for post-employment liabilities for the first 20 employees hired by [plaintiff] for the purpose of performing reclamation work." Plaintiff's complaint concludes:

> WHEREFORE, for the foregoing reasons, plaintiff moves the Court to enter judgment against defendant equivalent to the amount of damages sustained by plaintiff at the time of the trial, plus prejudgment and post judgment interest as required by law, for its costs and for such other and further relief as this Court deems just and proper.

(Compl. at 3.)

Defendant removed this case to this court on May 17, 1996, alleging the existence of

---

1. *See* Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C.A. §§ 9701–9722 (West Supp.1996).

federal diversity jurisdiction as the basis for removal. On May 24, 1996, plaintiff moved to remand this case to state court.

## II.

Subject to limited exceptions, a defendant may transfer a case from a state to federal court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441(a). Federal district courts have original jurisdiction of actions between citizens of different states in which the "matter in controversy" exceeds the value of fifty thousand dollars. 28 U.S.C.A. § 1332(a). Plaintiff asserts that, although the requisite diversity of citizenship exists, this action is not one of which this court has original jurisdiction because the matter in controversy does not exceed the value of fifty thousand dollars. A district court must remand an action that was removed from state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C.A. § 1447(c).

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite diversity of citizenship exists unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

However, the "legal certainty" test expressly applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court. A different test applies in removal situations like this one in which the plaintiff has made an unspecified demand for damages in state court. A defendant that removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount. *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992).[2] This test is framed alternatively as a requirement that a defendant demonstrate that it is more likely than not that the amount in controversy exceeds the jurisdictional amount. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996).

Removal statutes must be construed in the light of the federalism concerns that animate the policy of strictly confining federal jurisdiction within the congressionally-set limits. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). "The policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic*

---

2. Although the Fourth Circuit has held that the defendant bears the burden of proof regarding the existence of the required amount in controversy in a removal case, *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994), it has not indicated what degree of proof must be satisfied in a case in which a plaintiff has made an unspecified demand for damages. Four other circuit courts have addressed the issue, however, and each has concluded that the propriety of removal should be determined by the preponderance of the evidence test. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir.1993); *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir.1993); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992). The court notes but does not apply the test stated in *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 23 (S.D.W.Va.1994) and *White v. J.C. Penney Life Insurance Co.*, 861 F.Supp. 25, 27 (S.D.W.Va.1994). Those two cases applied an inverted legal certainty test in holding that a defendant in a removal action

must prove to a legal certainty that the requisite amount in controversy is met when the amount of damages a plaintiff seeks is unclear. Without repeating the entirety of the arguments presented by the Fifth, Sixth, Ninth, and Eleventh Circuits, the legal certainty test initially formulated by the United States Supreme Court in *Red Cab* is inappropriate for remand actions both because the *Red Cab* decision itself seems to limit the legal certainty test to situations in which a case is initially filed in federal court and because the closest Supreme Court dictum on point suggests that a defendant need only prove by a preponderance of the evidence that the requisite amount exists, *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (stating that a court "may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence"). *See generally*, 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725 (2d ed. 1985 & Supp.1996).

*Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994); *see also Able v. Upjohn Co.*, 829 F.2d 1330, 1332 (4th Cir.1987) (stating that "congressional desire to restrict removal has been understood to require that doubts about the propriety of removal be resolved in favor of retained state court jurisdiction"), *cert. denied*, 485 U.S. 963, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988).

The amount in controversy is determined on the basis of the record existing at the time the petition for removal is filed. *Red Cab*, 303 U.S. at 291, 58 S.Ct. at 591; *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995). The relief that plaintiff requests in its complaint is "the amount of damages sustained by plaintiff at the time of trial, plus prejudgment and post judgment interests as required by law."[3] The matter in controversy thus has two aspects: (1) the Coal Act obligations incurred by plaintiff up to the time of the filing of the complaint and (2) the Coal Act obligations that plaintiff will incur between the time of the filing of the complaint and the time of trial. With regard to the first figure, plaintiff alleges that, at the time of the filing of the complaint, it had incurred damages of $19,243.50. The second figure, however, is contingent upon at least four factors: (1) the number of additional employees who retire before working for another employer in the mining industry, (2) the number of retired employees who come out of retirement in order to work for a different employer in the mining industry, (3) the number of retired employees who die, and (4) the date of the trial. "[C]osts to be incurred subsequent to the filing of the complaint but prior to trial," when they are alleged in the complaint, are properly considered as a part of the value of the matter in controversy. *Broglie v. MacKay–Smith*, 541 F.2d 453, 455 (4th Cir.1976). Plaintiff alleges in its complaint that its obligations under the Coal Act accrue at a rate of $1350 per month.[4] Defendant has not proved by a preponderance of the evidence that at the time of trial, plaintiff's damages will be more than fifty thousand dollars.[5]

The value of the matter in controversy in this case is determined by considering

---

3. Plaintiff's claims for interest and costs are not considered in determining the amount in controversy. 28 U.S.C.A. § 1332.

4. Accruing at $1350 per month, damages will exceed fifty thousand dollars only if the trial begins more than twenty-two months from the filing of the complaint.

5. Without stating whether the court would have considered any affidavits or other evidence going to the issue of the amount in controversy submitted by defendant either concurrently with or after the filing of the removal petition, the court notes that none was submitted. Defendant refers in its supplemental brief to discovery that indicates that, at some point since the filing of the complaint, plaintiff's Coal Act obligations have increased and are accruing currently at the rate of $2,025 per month. Factual allegations in a legal memorandum are insufficient as proof. Even if the new, higher rate of accrual were properly before the court, defendant would still be unable to satisfy its burden of proving jurisdiction: as defendant itself admits, the requisite amount in controversy will most likely not be met by the time of trial even at the higher accrual rate.

Moreover, regardless of whether the rate of accrual has changed since the time of removal, the question properly before the court is whether federal jurisdiction existed at the time of removal. There are cases that uphold judgments in district courts even though there was no federal jurisdiction at the time of removal if, at some point, the case assumed a posture in which federal jurisdiction did exist. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951); *Cades v. H & R Block, Inc.*, 43 F.3d 869, 873 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); *Able v. Upjohn Co.*, 829 F.2d 1330, 1333 (4th Cir.1987), *cert. denied*, 485 U.S. 963, 108 S.Ct. 1229, 99 L.Ed.2d 429 (1988). Perhaps at some point, if this court denied the motion to remand, this case would assume a posture in which jurisdiction existed (as would be the case if, for instance, the case took an inordinately long time to proceed to trial or if the plaintiff filed an amended complaint seeking a judgment regarding future liability as well). Such conjecture, however, is not properly the basis of the court's ruling in this matter as it now stands: the present matter concerns whether jurisdiction existed at the time of removal. If, on remand, this case subsequently does assume a posture in which the defendant can meet its burden of proving the existence of federal jurisdiction, defendant may file a new removal petition and remove the case, provided that the petition is filed within thirty days after defendant receives a copy of a paper from which it may first be ascertained that the case has become removable and provided that removal may not be granted more than one year from the original commencement of the action. 28 U.S.C.A. § 1446(b).

the judgment that would be entered if plaintiff prevailed on the merits. *Healy v. Ratta,* 292 U.S. 263, 267, 54 S.Ct. 700, 702, 78 L.Ed. 1248 (1934) (stating that "[t]he controversy here is that defined by the pleadings, and the matter in controversy does not embrace more than the right asserted") (citation omitted). If plaintiff were to prevail on the merits, this court most likely would enter a judgment for less than fifty thousand dollars; defendant certainly has not satisfied its burden of proving otherwise. This potential judgment determines the value of the amount in controversy, and, since that value is less than the jurisdictional amount, the court does not have jurisdiction of this case.

Defendant, however, argues that the court should consider the possibility of payments incurred by plaintiff even after the beginning of trial in determining the amount in controversy. The Supreme Court faced an analogous situation in *New England Mortgage Security Co. v. Gay,* 145 U.S. 123, 12 S.Ct. 815, 36 L.Ed. 646 (1892). In *New England Mortgage,* the plaintiff entered into an allegedly usurious contract with the defendant. In order to void the contract in its entirety, the plaintiff was statutorily required to establish the existence of usury by maintaining an action that essentially involved only one of the payments. The statute provided that, by establishing usury in the first action involving a single payment, the plaintiff could void the entire contract in a second action as a matter of course.

■ The Supreme Court held that the value of the matter in controversy in the first action was the value of the single payment, which was less than the jurisdictional amount, despite the fact that the practical force of the first action clearly involved the validity of the entire contract, which was well in excess of the jurisdictional amount:

It is well settled in this court that when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur.

*New England Mortgage,* 145 U.S. at 130, 12 S.Ct. at 816. *See also Healy,* 292 U.S. at 267, 54 S.Ct. at 702 (stating that "the collateral effect of the decree, by virtue of *stare decisis,* upon other and distinct controversies may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law").

■ The present matter is similar to *New England Mortgage.* If plaintiff were to prevail on the merits in this case, it could recover future amounts by instituting new and separate actions in which the collateral effect of a judgment in this case would be controlling, assuming that defendant would even require a separate court order. However, those future events do not properly constitute part of the value of the matter in controversy in this case.

Defendant nonetheless maintains that the value of the matter in controversy is determined in the light of the potential collateral effects of a judgment in this case. As an initial matter, defendant seems to misconstrue plaintiff's complaint. Plaintiff has alleged a breach of contract in which damages are sought for the amount that plaintiff maintains will be due and owing under the contract at the time of trial. Plaintiff has not demanded a judgment for prospective relief flowing infinitely into the future or a declaration concerning the meaning of the contract; if it had so demanded, the amount in controversy would be met. *Broglie v. MacKay–Smith,* 541 F.2d 453, 455 (4th Cir.1976).

■ Accordingly, defendant's analogies to *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), *Aetna Casualty & Surety Co. v. Flowers,* 330 U.S. 464, 67 S.Ct. 798, 91 L.Ed. 1024 (1947), and *Brotherhood of Locomotive Firemen & Enginemen v. Pinkston,* 293 U.S. 96, 55 S.Ct. 1, 79 L.Ed. 219 (1934), are misplaced. In those cases, the Supreme Court held that the value of the matter in controversy was in excess of the jurisdictional amount, largely by looking to the collateral effects of a potential judgment. However, as the Fourth Circuit explained, the finding of the jurisdictional amount in controversy was a result of considering the relief sought in the complaint:

[I]n each of these cases, the matter sought to be litigated was not a right to future payments contingent on a continuation of present status, but a basic right to receive unconditional payments in the future....

... The significance of the distinction between a contest over a basic right to payment and a contest over payment of certain installment payments, the basic right to payment upon the happening of certain conditions being unquestioned, is .... that for jurisdictional purposes the value of the former is its present aggregate value, while the value of the latter is the aggregate of installments alleged to be past due.

*Beaman v. Pacific Mut. Life Ins. Co.,* 369 F.2d 653, 656 (4th Cir.1966).[6] A plaintiff is the master of its complaint. The complaint defines the matter in controversy.

■ Moreover, this case involves a private contract and is not an action that directly involves obligations of an employer under the Coal Act. Thus, defendant's further reliance on *Flowers,* in which a former employee brought an action for post-employment benefits, is again misplaced. In *Flowers,* the Court noted that "the Tennessee statute which creates liability for the award contemplates a single action for the determination of claimant's right to benefits and a single judgment for the award granted." *Flowers,* 330 U.S. at 467–68, 67 S.Ct. at 800. This court need not consider the situation that would be presented if a former employee of plaintiff were bringing an action for benefits. This case is a state law contract case and the mechanics of the Coal Act are at best tangential to the merits of this matter. As *Flowers* itself stated:

> If this case were one where judgment could be entered only for the installments due at the commencement of the suit, future installments could not be considered in determining whether the jurisdictional amount was involved, even though the judgment would be determinative of liability for future installments as they accrued.

330 U.S. at 467, 67 S.Ct. at 800 (citation omitted). This case is one in which judgment may be entered only for installments due at the end of trial. Accordingly, only the value of those installments is the amount in controversy.

### III.

■ Finally, defendant argues that, because a plaintiff in a West Virginia state court may, even after judgment, amend the pleadings to allow them to conform to the evidence pursuant to W.Va.R.Civ.P. 15(b),[7] *Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 381 S.E.2d 367, 375–76 (1989), the court should consider a potential Rule 15(b) amendment in determining the amount in controversy. Although the bare possibility exists that the parties may, "by express or implied consent," try the issue of future payments in this case and thereby make such payments the subject of potential Rule 15(b) amendments, the court declines to consider such a speculative factor in determining the value of the matter in controversy here.

Defendant cites two authorities to support its claim that the existence and potential use of Rule 15(b) necessitates consideration of potential future obligations as a part of the value of the matter in controversy. In *Dunn v. Pepsi–Cola Metropolitan Bottling Co.,* 850 F.Supp. 853 (N.D.Cal.1994), plaintiff brought an action based upon conduct that had already occurred, alleging damages below the jurisdictional amount. The district court nevertheless found the existence of federal jurisdiction because (a) the plaintiff clearly intended to present evidence of injuries that

---

**6.** *Beaman,* a 1966 case, does not discuss *Wiesenfeld,* which was decided in 1975. However, the facts of *Wiesenfeld* are sufficiently analogous to the facts of *Flowers* and *Pinkston,* and the *Beaman* analysis accordingly applies to *Wiesenfeld* as well.

**7.** Rule 15(b) provides:
(b) *Amendments to conform to the evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

would support a verdict in excess of the jurisdictional amount and (b) the plaintiff could potentially amend the complaint in a way that would support an award in excess of the jurisdictional amount.[8]

However, defendant's other cited authority, a scholarly treatise, casts considerable doubt on the propriety of the conclusion reached in *Dunn.* After recognizing the existence of cases similar to *Dunn* that consider the potential application of procedural rules like Rule 15(b) in determining the amount in controversy, the treatise concludes:

> The better practice is to treat the amount requested by the plaintiff in the state court as the amount in controversy. To hold that state rules ... place an unlimited amount in controversy, in effect, would abolish the [$50,000] requirement as a limitation on removal in states that have such a rule.... This would make meaningless the Supreme Court's ruling in St. Paul Mercury Indemnity Company v. Red Cab Company that the sum claimed by the plaintiff controls so long as it is made in good faith. Moreover, it is inconsistent with the view that the removal statute "which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied."

14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725, at 426 (2d ed. 1985) (footnotes omitted).

Two circuit court decisions, *De Aguilar v. Boeing Co.,* 47 F.3d 1404 (5th Cir.1995) and *Burns v. Windsor Insurance Co.,* 31 F.3d 1092 (11th Cir.1994), directly rule on the application of state procedural rules such as Rule 15(b) in determining the amount in controversy. *De Aguilar* involved injuries sustained in an airplane crash and *Burns* involved a car crash. In each case, the plaintiff's complaint was brought in state court praying for damages below fifty thousand dollars. The defendants in both cases sought to remove, alleging that the plaintiffs' rela-

tively low prayer for relief was merely an effort to avoid federal jurisdiction. The Eleventh Circuit in *Burns* held that there was no federal jurisdiction; the Fifth Circuit in *De Aguilar* held that there was. The Fourth Circuit has not ruled directly on the issue.

The factual setting here is such that the court need not adopt either *De Aguilar* or *Burns.* Moreover, the court observes that the *De Aguilar* and *Dunn* line of cases stands at most for the proposition that, when a case involves liability based on conduct that has already occurred, a court may look beyond the plaintiff's complaint and examine the underlying transaction to determine whether federal jurisdiction exists. In this matter, the plaintiff's claim is based on breaches of contract that have already occurred. The potential future payments that defendant wants to be considered as a part of the matter in controversy are grounded not on past conduct but on future conduct that may or may not occur: namely, future breaches of the contract by defendant and additional obligations imposed on plaintiff by the Coal Act. The court declines to extend the analyses of *De Aguilar* and *Dunn* to the circumstances of this case which are more closely analogous to that of the long-standing Supreme Court decision in *New England Mortgage,* to which considerable stare decisis value should be afforded.

Accordingly, defendant has not met its burden of proving that the amount in controversy raised by plaintiff's complaint is in excess of the jurisdictional amount. Thus, this case is neither one of which this court has diversity jurisdiction, 28 U.S.C.A. § 1332, nor removable to federal court by the defendant, 28 U.S.C.A. § 1441(b).

## IV.

Plaintiff additionally has requested that the court award costs and expenses incurred as a result of removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of remov-

---

8. The defendant also cites to an unpublished decision in this district, *Priestley v. Legge Associ-*

*ates, Inc.,* No. 95–0511 (S.D.W.Va. Nov. 28, 1995), reaching a result similar to *Dunn.*

al." 28 U.S.C.A. § 1447(c). An award of costs and expenses is solely within the discretion of the court. *Morris v. Bridgestone/Firestone, Inc.,* 985 F.2d 238, 240 (6th Cir.1993). Factors that courts in this circuit have considered in assessing the propriety of an award of costs and expenses include whether the defendant acted in bad faith, *Marler v. Amoco Oil Co.,* 793 F.Supp. 656, 660 (E.D.N.C.1992), whether the lack of federal jurisdiction was "obvious," *Dunkin Donuts of America v. Family Enters., Inc.,* 381 F.Supp. 371, 373 (D.Md.1974) (construing previous version of statute), and whether the removal was intended solely to delay the case or harass the plaintiff, *Medical Legal Consulting Serv., Inc. v. Covarrubias,* 648 F.Supp. 153, 159–60 (D.Md.1986) (construing previous version of statute).

■ The court does not deem an award of costs and expenses appropriate. The propriety of this removal action was subject to fair dispute, and it cannot fairly be said that this action was brought to harass or annoy plaintiff. Accordingly, plaintiff's motion for costs and expenses must be denied.

### V.

For the reasons stated, it is ORDERED that plaintiff's motion to remand be, and it hereby is, granted, and this civil action remanded to the Circuit Court of Kanawha County, West Virginia.

It is further ORDERED that plaintiff's motion for costs be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record and to the Clerk of the Circuit Court of Kanawha County, West Virginia.

### *JUDGMENT ORDER*

Pursuant to the memorandum order this day entered in the above-styled civil action, it is ORDERED and ADJUDGED that this case be, and the same hereby is, remanded to the Circuit Court of Kanawha County, West Virginia.

The Clerk is directed to forward certified copies of this order to all counsel of record.