Bryan C. McCURDY and Doris
W. McCurdy, Plaintiffs,

v.

MOUNTAIN VALLEY PIPELINE,
LLC, Defendant.

Civil Action No. 1:15–03833.

United States District Court,
S.D. West Virginia,
at Bluefield.

Signed May 22, 2015.

Derek O. Teaney, Appalachian Mountain Advocates, Lewisburg, WV, for Plaintiffs.

Charles S. Piccirillo, K. Brian Adkins, Shaffer & Shaffer, Madison, WV, Edward Ryan Kennedy, Stephen F. Gandee, Robinson & McElwee, Clarksburg, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER

DAVID A. FABER, Senior District Judge.

Pending before the court is plaintiffs' motion to remand. (Doc. No. 8). For reasons more fully explained below, the motion for remand is **DENIED.**[1]

### I. Background

Defendant intends to build an approximately 300–mile long interstate natural gas pipeline originating in Wetzel County, West Virginia and terminating in Pittsylvania County, Virginia. (Doc. No. 11 at 1). Under defendant's proposed route, the pipeline will travel through ten counties in

---

**1.** Also pending before the court is plaintiffs' motion for expedited consideration of their motion to remand. (Doc. No. 10). In their motion, plaintiffs sought an expedited briefing schedule and a hearing following conclusion of briefing. (Doc. No. 8 at 2). As the parties have fully briefed the matter and the court has determined that oral argument is unnecessary, the motion is **DENIED** as moot.

West Virginia: Braxton, Doddridge, Greenbrier, Harrison, Lewis, Monroe, Nicholas, Summers, Webster, and Wetzel, but will not provide natural gas to West Virginia customers. (Doc. No. 1, Exh. A at ¶ 27). Instead, the pipeline will take natural gas from West Virginia to consumers in states farther south. *Id.* at ¶¶ 29–30. According to defendant, it plans to begin construction in January 2017, and plans for the pipeline to be fully operational by December 2018. (Doc. No. 11 at 2).

Before construction begins, defendant must receive a Certificate of Public Convenience and Necessity (hereinafter "Certificate") from the Federal Energy Regulatory Commission ("FERC"). *Id.* at 1. The certification process requires defendant to conduct surveys and environmental studies along the proposed pipeline route. *Id.* at 2. Specifically, defendant must inform the FERC of any potential impact upon natural resources, wetlands, and endangered species located within the proposed pipeline route. *Id.* For defendant to remain on schedule, it must conduct and complete a number of surveys in the summer of 2015. *Id.*

Plaintiffs own three tracts of land in Monroe County, West Virginia located within the "proposed survey corridor." (Doc. No. 1, Exh. A at ¶ 20). Defendant contacted plaintiffs in late January 2015, notifying plaintiffs of its intent to conduct surveys on their property. *Id.* According to defendant, it must survey three specific endangered species found on plaintiffs' land: one animal, the Indiana Bat, and two plants, the Shale Barren Rock Cress and the Running Buffalo Clover. (Doc. No. 11

at 2). In early February 2015, a pipeline representative called plaintiffs and requested verbal permission to enter their property to conduct surveys. (Doc. No. 1, Exh. A at ¶ 21). Plaintiffs declined. *Id.* at 22. Later that month, defendant sent plaintiffs a letter threatening legal action unless plaintiffs granted access to their property before March 9, 2015.[2] *Id.* at ¶ 23.

In response, plaintiffs filed suit in the Circuit Court of Monroe County, seeking a declaration that defendant has no right to enter their property for survey purposes under West Virginia law. (Doc. No. 1, Exh. A). Alternatively, if the court finds that defendant may enter plaintiffs' property, plaintiffs seek a determination of the area to be surveyed and the scope of defendant's permissible activities while conducting surveys. *Id.* On March 27, 2015, defendant removed the case to this court, invoking the court's diversity jurisdiction. (Doc. No. 1). Plaintiffs filed a motion to remand on April 3, 2015, arguing that the amount in controversy does not exceed $75,000, thereby preventing the court from exercising subject matter jurisdiction. (Doc. No. 8).

## II. *Standard of Review*

A defendant may remove an action from state court to federal court only if the case could have been brought originally in federal court. *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 754 (4th Cir.1996) (citing 28 U.S.C. § 1441). A federal court has original jurisdiction over actions where the controversy exists between citizens of different states[3] and the object of the litigation

---

2. On the same day that defendant removed this case to federal court, it filed suit against seventy-five landowners in the Southern District of West Virginia, seeking entry onto their land for survey purposes. (*Mountain Valley Pipeline, LLC v. Dosier et al.*, Civil Action No. 5:15–cv–03858).

3. In this case, the parties do not dispute diversity of citizenship, as plaintiffs are citizens of West Virginia and defendant is a LLC formed in Delaware and no members of the LLC hold West Virginia citizenship. (Doc. No. 1 at ¶ 3)..

exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1) (2015).

■ Where a party removes a case to federal court alleging diversity jurisdiction, the removing party bears the burden to establish that the object of the dispute satisfies the $75,000 threshold for amount in controversy. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). And, the removing party must show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See White v. Chase Bank USA, NA,* Civil Action No. 2:08–1370, 2009 WL 2762060, at *1 (S.D.W.Va. Aug. 29, 2009) (citing *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 488 (S.D.W.Va.2001)). Under the preponderance of the evidence standard, a party must show that it is "more likely than not" that the amount in controversy satisfies the jurisdictional limit. *Judy v. JK Harris & Co. LLC, et al.*, 2011 WL 4499316, Civil Action No. 2:10–cv–01276, at *3 (S.D.W.Va. Sept. 27, 2011) (citing *Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 935 (S.D.W.Va.1996)). But, as the court has noted before, it need not leave its common sense behind when applying these principles. *Mullins v. Harry's Mobile Homes*, 861 F.Supp. 22, 24 (S.D.W.Va.1994).

### III. *Discussion*

In the memoranda supporting their motion to remand, plaintiffs frame the controversy between the parties in narrow terms, arguing that the dispute centers only on whether defendant may enter plaintiffs' property to conduct surveys for the proposed pipeline. To support their assertion that the dispute does not satisfy the amount in controversy requirement,

plaintiffs attached to their memorandum affidavits attesting that they would allow defendant onto their property to survey in exchange for $60,000. (Doc. No. 8 at Exhs. 1, 2). Furthermore, plaintiffs argue that if this court grants their requested injunction, defendant may, nonetheless, receive a conditional Certificate from the FERC and thereby adhere to its projected schedule. (Doc. No. 12 at 2). Consequently, plaintiffs argue that the actual amount in controversy is only $60,000 and an injunction preventing defendant from surveying their property would not bring an end to defendant's proposed pipeline.

Defendant contends otherwise, arguing that plaintiffs' requested relief would, at a minimum, result in delays of at least one year to defendant's construction schedule. Defendant notes that the three species it must survey on plaintiffs' property are not active or in season year round. (Doc. No. 11 at 2). To ensure that the species are surveyed accurately, the United States Fish and Wildlife Service ("USFWS") has assembled data collection timetables with which defendant must comply to receive a Certificate. *Id.* In the case of the Shale Barren Rock Cress, the survey window set by the USFWS is only two months: from August 1 to September 30. (Doc. No. 11 at Exh. 4). For the other two species, defendant's window is slightly longer, approximately two and a half months for the Indiana Bat and five months for the Running Buffalo Clover.[4] *Id.* Defendant argues that, if the court grants plaintiffs' requested injunction, it will have to wait almost a full year to conduct the necessary surveys and, consequently, will not receive a Certificate from the FERC. Absent this

---

**4.** According to defendant, the USFWS's precise timetables for surveys are as follows:

| | |
|---|---|
| Indiana Bat | June 1, 2015–August 15, 2015 |
| Shale Barren Rock Cress | August 1, 2015–September 30, 2015 |
| Running Buffalo Clover | May 1, 2015–September 30, 2015. |

(Doc. No. 11, Exh. 4 at ¶ 5).

Certificate, defendant argues that it will not finish the pipeline on time, thereby losing $1,400,000 for each day lost on its construction schedule, far exceeding the jurisdictional requirement for amount in controversy. (Doc. No. 11, Exh. 3 at 2).

Generally, courts ascertain the amount in controversy by reference to the plaintiff's complaint. *JTH Tax, Inc. v. Frashier,* 624 F.3d 635, 638 (4th Cir.2010) (citing *Wiggins v. N. Am. Equitable Life Assurance Co.,* 644 F.2d 1014, 1016 (4th Cir.1981)). Cases where a plaintiff seeks injunctive relief, however, present a more complicated analysis. In such cases, a court should "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Id.* at 639 (citing *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir.2002)).

In light of this standard, the court begins its analysis from a broader perspective than that presented by the parties in their respective memoranda, as plaintiffs' complaint does not limit the controversy to defendant's right to survey on their properties. Plaintiffs' complaint is more far-reaching and argues that defendant cannot use eminent domain to construct its proposed pipeline and, as a result, defendant has no right to survey on their properties. West Virginia law grants the power of eminent domain to "every corporation ... authorized to transact business in [ ] the State, for any purpose of internal improvement for which private property may be taken or damaged for *public use* ...". *West Virginia Code* § 54–1–1 (2015) (emphasis added). Furthermore, West Virginia law permits the agents of an entity invested with eminent domain to enter "upon lands for the purpose of examining the same, surveying and laying out the lands, ... provided no injury be done to the owner or possessor of the land ...".

*West Virginia Code* § 54–1–3 (2015). Ostensibly, if use of defendant's proposed pipeline is a public use, then defendant may employ Section 54–1–3 to enter plaintiffs' properties to conduct the necessary surveys.

As a result, plaintiffs' complaint does not merely challenge defendant's right to survey under *West Virginia Code* § 54–1–3. Instead, plaintiffs argue that defendant cannot avail itself of Section 54–1–3 because its proposed pipeline does not meet the requirements of Section 54–1–1. Plaintiffs' complaint argues that defendant's proposed pipeline "is not for a public use under W. Va.Code § 54–1–2(a)(3)," (Doc. No. 1 at Exh. 3, ¶ 44), and, as a result, "Defendant is not invested with the power of eminent domain by W. Va.Code § 54–1–1 *et seq.*" (Doc. No. 1 at Exh. 3, ¶ 45). While both parties' memoranda frame the controversy as limited to defendant's right to survey on plaintiffs' property, the court must use the broader relief requested in plaintiffs' complaint as its guide to determine a potential injunction's value to plaintiffs and cost to defendant.

Furthermore, the court can consider plaintiffs' affidavits attesting that they would allow defendant on their property for $60,000 as plaintiffs' estimate of the value of the relief requested, but not as evidence of a settlement offer. "In addressing the propriety of federal jurisdiction in a removal action, courts base their decision on the record existing at the time the petition for removal was filed." *McCoy,* 147 F.Supp.2d at 489. As a result, the court may consider "evidence of any settlement demands made by the plaintiff *prior to removal.*" *Sayre v. Potts,* 32 F.Supp.2d 881, 886 (S.D.W.Va.1999) (citing *Watterson v. GMRI, Inc.,* 14 F.Supp.2d 844, 850 (S.D.W.Va.1997)) (emphasis added). Plaintiffs signed their affidavits on April 3, 2015, after defendant removed this

case on March 27, 2015. (Doc. No. 8 at Exhs. 1, 2). Plaintiffs' complaint makes no reference to this $60,000 figure, either as a settlement offer or as plaintiffs' estimate of the injunction's value to them. Because plaintiffs proffered this figure after removal, the court will not consider it as a settlement offer, but will consider it as evidence of plaintiffs' estimated value of an injunction.

Having examined plaintiffs' complaint, the court concludes that plaintiffs' requested relief almost certainly would cost defendant more than $75,000. If this court grants the injunction that plaintiffs seek, it would require the court to find that defendant's proposed pipeline is not for a public use as defined by West Virginia law. Such a ruling would prevent defendant from utilizing eminent domain to seize land within the proposed pipeline's corridor. Under principles of res judicata, such a ruling could, in effect, bring about an end to defendant's proposed pipeline in West Virginia. While plaintiffs may estimate the injunction's value at only $60,000, the court must also consider its potential cost to defendant, who has already invested a considerable amount and plans to invest considerably more. Consequently, if this court enters plaintiffs' requested injunction, its cost would far exceed the jurisdictional minimum. As a result, the court concludes that it possesses subject matter jurisdiction over this case and plaintiffs' motion to remand must be denied.

Finally, plaintiffs' motion for remand requests attorneys' fees and costs. (Doc. No. 9 at p. 10). Plaintiffs argue that defendant did not have an objectively reasonable basis for removal. *Id.* As the court has determined that defendant's removal of this case is proper, the court must also deny plaintiffs' request for attorneys' fees.

## IV. *Conclusion*

For the foregoing reasons, the court concludes that the instant dispute satisfies the amount in controversy requirement and the court may exercise subject matter jurisdiction over the case. Accordingly, plaintiffs' motion to remand the case to the Circuit Court of Monroe County, (Doc. No. 8), is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.