**Charlotte Judy SAYRE and Stewart Sayre, Plaintiffs,**

v.

**Brian POTTS and Cherrington Scrap Metals, Inc., an Ohio corporation, Defendants.**

**No. CIV.A. 6:98–1120.**

United States District Court, S.D. West Virginia, Parkersburg Division.

Jan. 8, 1999.

---

Todd S. Wiseman, Goldenberg, Goldenberg & Stealey, Parkersburg, WV, for plaintiff.

Tanya M. Kesner, J. Robert Leslie and Brent K. Kesner, Kesner, Kesner & Bramble, Charleston, WV, for defendant.

## ORDER

GOODWIN, District Judge.

Pending before the Court is the plaintiffs' motion to remand this action to the Circuit Court of Wood County, West Virginia. The plaintiffs, Charlotte Judy Sayre and Stewart Sayre, contend that because the amount in controversy does not exceed $75,000, the Court does not have subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1332, 1441(a). The defendants, Cherrington Scrap Metals, Inc. (Cherrington) and Brian K. Potts(Potts), have filed a response to the plaintiffs' motion in which they claim that the case satisfies the jurisdictional requirement. After reviewing the legal memoranda and evidence submitted by the parties, the Court concludes that the amount placed into controversy by Mrs. Sayre's claim exceeded $75,000 when the case was removed and that the Court therefore has jurisdiction over Mrs. Sayre's claim. The Court further concludes that it has supplemental jurisdiction over Mr. Sayre's claim pursuant to 28 U.S.C. § 1367. Based upon these conclusions, the Court **DENIES** the plaintiffs' motion to remand.

## I. Statement of the Case

This action arises from an automobile accident that occurred on November 18, 1996 in Parkersburg, West Virginia. At the time of the accident, Potts was driving his truck in the course and scope of his employment for Cherrington. (Compl. ¶ 6.) The Sayres claim that Potts operated his truck negligently, in that Potts ran a red light and collided with Mrs. Sayre's vehicle. (Id. ¶ 4.) As a result of the accident, Mrs. Sayre alleges that she suffered the following:

> serious and permanent injuries and damages, past present and future, including, but not limited to the following: temporary and permanent physical injuries; medical and related expenses, amounting to approximately $5,270.00 to date; physical pain and suffering; mental anguish; loss of income, earnings and business profits; loss of earning capacity; loss of enjoyment of life; other intangible damages; other damages and expenses.

(Id. ¶ 13.) Mr. Sayre seeks damages based on his "loss of the comfort, companionship, society and consortium of his wife, the plaintiff, Charlotte Judy Sayre." (Id. ¶ 15.) The ad damnum clause of the complaint does not state a dollar amount. (Id. at 4.)

The defendants removed this case from state court pursuant to 28 U.S.C. § 1441(a), which allows defendants to remove cases to federal court if the court would have had original jurisdiction over the matter. The defendants base federal jurisdiction upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. Under that statutory provision, federal district courts have original jurisdiction over a case if the case involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Without question, diversity of citizenship exists in this case: the plaintiffs are residents of Jackson County, West Virginia; Potts is a resident of Ohio; and Cherrington is an Ohio corporation with its principle place of business in Jackson, Ohio. The key issue is whether the $75,000 jurisdictional amount is satisfied as to each plaintiff.[1]

## II. Standard of Review

The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994). Thus, in a removal action in which federal jurisdiction is premised upon 28 U.S.C. § 1332, the defendant bears the

---

1. "West Virginia recognizes that a loss of consortium action is distinct from the injured spouse's underlying tort claim." *DuPont v. United States*, 980 F.Supp. 192, 195 (S.D.W.Va.1997). Because Mr. Sayre's consortium claim is separate and distinct from Mrs. Sayre's tort action, the defendants must show independent bases for federal subject matter jurisdiction for each claim. *Zahn v. International Paper Co.*, 414 U.S. 291, 293, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

burden of proving that each plaintiff's claim exceeds the jurisdictional amount. *Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 935 (S.D.W.Va.1996). This burden is often resolved without debate because a plaintiff's good-faith claim for specific monetary damages in the complaint binds the defendant. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961) (stating that general federal rule is that complaint determines the amount in controversy and, consequently, federal jurisdiction). However, in cases in which the complaint's *ad damnum* clause does not specifically state the amount in controversy, a more difficult question arises.

Neither the Supreme Court nor the Fourth Circuit has adopted a specific standard against which a defendant's attempt to prove the required amount in controversy for a removal motion will be weighed when the plaintiff does not provide a specific damage amount in his complaint.[2] In the Southern District of West Virginia, a difference of opinion exists among the various judges over the appropriate standard in such cases. One district judge stated that the defendant must prove to a "legal certainty" that the amount in controversy meets the jurisdictional requirement. *See White v. J.C. Penney Life Ins. Co.*, 861 F.Supp. 25, 27 (S.D.W.Va.1994) (Faber, J.) ("When the amount of damages a plaintiff seeks is unclear, the courts often require the defendant to prove to a legal certainty that plaintiff's claim meets the requisite jurisdictional amount."); *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 24 (S.D.W.Va.1994) (Faber, J.) (same); *cf.* 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3725 at 212 (Supp.1997) (noting that one potential standard requires defendant to show to legal certainty that amount exceeds jurisdictional amount).[3] Others have required that the defendant show by a "preponderance of the evidence" that the disputed amount exceeds the jurisdictional minimum. *See Landmark Corp.*, 945 F.Supp. at 935 (Copenhaver, J.) ("A defendant that removes a case from state court in which damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount."); *Whitney v. State Farm Mut. Auto. Ins. Co.*, No. 3:98–0241 at 3 (S.D.W. Va. June 29, 1998) (Chambers, J.) (employing preponderance of the evidence test); *cf. Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir.1996) (applying preponderance of the evidence standard); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir.1996) (same); *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir.1993) (same); *Garza v. Bettcher Indus., Inc.*, 752 F.Supp. 753, 763 (E.D.Mich. 1990) (same). Another district judge appears to employ the "reverse legal certainty" test in which a defendant must demonstrate that it is *not* a legal certainty that the claim

---

2. The Sayres' reliance on Judge Staker's opinion in *Watterson v. GMRI*, 14 F.Supp.2d 844 (S.D.W.Va.1997), for the applicable standard of review is misplaced. In *Watterson*, the plaintiffs' complaint in state court specified an amount of damages that was less than the jurisdictional limit. *Id.* at 845. In the case before this Court, the plaintiffs did not specify the amount of their damages.

3. In *Landmark Corp. v. Apogee Coal Co.*, Judge Copenhaver referred to the test that Judge Faber applied in *White* and *Mullins* as an "inverted legal certainty test." *Landmark Corp.*, 945 F.Supp. at 935 n. 2. As commonly applied, the inverted legal certainty standard (also referred to as the "reverse legal certainty standard" or the "converse legal certainty standard") requires the defendant to prove that it does not appear to a legal certainty that the amount in controversy is *less* than the jurisdictional limit. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir.1995) (quoting *Hale v. Billups of Gonzales, Inc.*, 610 F.Supp. 162, 164 (M.D.La.1985)). In *White* and *Mullins*, Judge Faber appears to employ a test in which the defendant must show to a legal certainty that the amount in controversy *exceeds* the jurisdictional limit. This test is commonly referred to as the "legal certainty" test. In fact, *White* and *Mullins* are cited as examples of the legal certainty test and not the inverted legal certainty test. *See* 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *supra*, § 3725 at 212 & n. 21.2 (providing citations of decisions in which courts applied legal certainty standard).

is for less than the jurisdictional amount.[4] *Cline v. Matney,* 20 F.Supp.2d 977, 979 (S.D.W.Va.1998) (Haden, J.) (denying motion to remand because "the amount in controversy has not been established to a legal certainty to be less than the jurisdictional minimum"); *Adkins v. Gibson,* 906 F.Supp. 345, 348 (S.D.W.Va.1995) (Haden, J.) (remanding case because "the Court finds and concludes the amount in controversy has been established to a legal certainty to be less than the jurisdictional minimum."); *cf. Atkins v. Harcros Chems., Inc.,* 761 F.Supp. 444, 446 (E.D.La.1991) (requiring defendant to show that it does not appear to legal certainty that plaintiff's claim is for less than jurisdictional amount); *Locklear v. State Farm Mut. Auto. Ins. Co.,* 742 F.Supp. 679, 680 (S.D.Ga.1989) (same); *Kennedy v. Commercial Carriers, Inc.,* 739 F.Supp. 406, 410 (N.D.Ill.1990) (same); *Partlow v. Jones Motor Co., Inc.,* 736 F.Supp. 744, 746 (E.D.Mich.1990) (same).

▪ After carefully considering the well-reasoned opinions of the district judges within this district, this Court adopts the preponderance of the evidence standard as the appropriate measure of whether the defendant has proven that the jurisdictional limit has been met in removal cases in which the original complaint does not state a specific damages amount. First, the legal certainty test that the United States Supreme Court formulated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.* is inappropriate for remand actions when the complaint does not contain a dollar value for claimed damages. In *St. Paul Mercury,* the Supreme Court stated that

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less

than the jurisdictional amount to justify dismissal.

⋅ ⋅ ⋅ ⋅ ⋅

> A different situation is presented in the case of a suit instituted in a state court and thence removed. There is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such was the purpose suit would not have been instituted in the first instance in the state but in the federal court.

*St. Paul Mercury,* 303 U.S. at 288–89, 290–91, 58 S.Ct. 586. From this language, it is apparent that the application of the *St. Paul Mercury* legal certainty test is limited to two situations: (1) cases brought in federal court in which the plaintiff alleges damages in excess of the jurisdictional limit, and (2) cases brought in state court in which the plaintiff alleges damages in excess of the required federal jurisdiction minimum. *Sanchez,* 102 F.3d at 402; *Gafford,* 997 F.2d at 157. The case at bar clearly does not fit into either category because the complaint does not state a specific damage amount.

Second, "the closest Supreme Court *dictum* on point suggests that a defendant need only prove by a preponderance of the evidence that the requisite amount exists." *Landmark Corp.,* 945 F.Supp. at 935 (Copenhaver, J.) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). In *McNutt,* the Supreme Court considered whether a complaint that a plaintiff originally filed in federal court met the jurisdictional amount-in-controversy requirement. After stating that the party seeking to invoke the jurisdiction of the federal courts has the burden of proving that jurisdiction is proper, the Supreme Court noted that a court may "insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdic-

---

4. Some courts have characterized this standard as requiring the party seeking to invoke federal jurisdiction to establish that " 'there is a probability that the value of the matter in controversy' exceeds the jurisdictional amount." *Corwin Jeep Sales & Serv., Inc. v. American Motors Sales Corp.,* 670 F.Supp. 591, 595 (M.D.Pa.1986) (quoting *Cunningham v. Ford Motor Co.,* 413 F.Supp. 1101, 1103 (D.S.C.1976)); *see also De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1411 (5th Cir.1995) (quoting *Corwin Jeep* ).

tion justify his allegations by a preponderance of the evidence." *McNutt,* 298 U.S. at 189, 56 S.Ct. 780. Thus, the preponderance of the evidence test finds its roots in and comports with Supreme Court precedent. *Gafford,* 997 F.2d at 160; *Garza,* 752 F.Supp. at 760.

Finally, in situations in which the plaintiff has not specified the damages that he seeks, the preponderance of the evidence standard strikes "[t]he proper balance between a plaintiff's right to choose his forum and a defendant's right to remove, without unnecessarily expanding federal diversity jurisdiction." *Tapscott,* 77 F.3d at 1357. The preponderance standard is a workable compromise that falls between the restrictive legal certainty test and the lenient reverse legal certainty standard. *Gafford,* 997 F.2d at 160 ("We believe that the mean between the extremes unsettles to the least extent the balance struck between the defendant's right to remove and the federal interest in limiting diversity jurisdiction."). The legal certainty standard would thwart a defendant's ability to remove a case by requiring that he "research, state and prove the plaintiff's claim for damages." *Id.; see also Garza,* 752 F.Supp. at 760. A liberal standard, such as the reverse legal certainty test, would impermissibly expand federal diversity jurisdiction by lowering the bar for admission into federal court. *Sanchez,* 102 F.3d at 403. The preponderance of the evidence test, on the other hand, is an appropriate standard in cases in which the plaintiff has not stated his damages because there is no other estimate to which the court may defer. *Tapscott,* 77 F.3d at 1356–57. It is an equitable resolution of the conflict between a defendant's right to a forum free from local bias and the limitations on diversity jurisdiction.

■■■ In order to meet the preponderance of the evidence standard and to establish jurisdiction upon removal, a defendant must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount. *Landmark Corp.,* 945 F.Supp. at 935 (citing *Tapscott,* 77 F.3d at 1357). To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 567

(9th Cir.1992) (stating that allegation without supporting facts will not satisfy burden of establishing amount in controversy). Rather, the defendant seeking removal must supply evidence to support his claim regarding the amount at issue in the case. In so doing, he may rely upon the entirety of the facts and circumstances comprising the plaintiff's damage claim. *See Mullins,* 861 F.Supp. at 24 (stating that court may consider complaint, removal petition and "other relevant matters in the file").

■■■ In addressing the propriety of federal jurisdiction in a removal action, courts base their decision on the record existing at the time the petition for removal was filed. *St. Paul Mercury,* 303 U.S. at 291, 58 S.Ct. 586. Specifically, the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal. *Landmark Corp.,* 945 F.Supp. at 936–37. To calculate that amount, "the court may look to the entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue." *White,* 861 F.Supp. at 27 (citing 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3725 at 423–24 (1985)). For purposes of determining subject matter jurisdiction, the court may consider

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

*Watterson,* 14 F.Supp.2d at 850 (internal citations omitted). Finally, in reaching a conclusion with regard to the amount in controversy based upon this evidence, the court "is

not required to leave its common sense behind." *Mullins,* 861 F.Supp. at 24.

## III. Discussion

### A. Mrs. Sayre's Claim

The starting point for ascertaining the amount in controversy when the petition for removal was filed is obviously the complaint itself. *See Hicks v. Universal Housing, Inc.,* 792 F.Supp. 482, 484 (S.D.W.Va.1992) ("The Courts have long held that the question of jurisdictional amount for purposes of removal is controlled by the allegations of plaintiff's complaint as those allegations exist at the time the petition for removal is filed.") Mrs. Sayre is not anymore specific in her complaint than one should expect from a "notice pleading." Nevertheless, the complaint does claim, among other things, that Mrs. Sayre's physical injuries were serious and permanent, and that she lost earning capacity. Those kinds of allegations, in the absence of an *ad damnum* clause, are evidence supporting the defendant's contention that the amount in dispute is in excess of the jurisdictional amount. In light of the other information in the complaint, however, those allegations, standing alone, would not carry the burden. The only specific reference to a damage amount was the $5270 in medical and related damages that the plaintiffs allegedly incurred in the two-year period between the accident and the filing of the complaint.

However, the analysis does not stop with a perusal of the "notice pleading" complaint. The parties have offered additional materials relating to the settlement negotiations that reflect upon the extent of Mrs. Sayre's injuries and the amount in controversy. *See Mullins,* 861 F.Supp. at 23 (stating that court may consider complaint, petition for removal and "other relevant matters in the file"). First, the submitted materials recount the history of demands made and offers received prior to the filing of the lawsuit. On August 27, 1998, prior to the filing of this action, Mrs. Sayre demanded $100,000 in compensation for her injuries. On September 3, 1998, Westfield Insurance Company (Westfield), the defendants' insurer, rejected that offer and counteroffered with $30,000. On September 21, 1998, Mrs. Sayre reduced her demand to $90,000. In response, West-

field restated its offer of $30,000. On September 28, 1998, Mrs. Sayre offered to accept $60,000. On that same day, Westfield declined to increase its offer. The Sayres filed this lawsuit in the Circuit Court of Wood County, West Virginia on October 30, 1998.

Second, details as to the nature and extent of Mrs. Sayre's injuries are found in the correspondence between counsel for the parties. In the August 27, 1998 demand letter, Mrs. Sayre's attorney outlined the scope of Mrs. Sayre's injuries and the nature of her damages to support her settlement demand. In that letter, plaintiffs' counsel noted that Mrs. Sayre's treating physician, Dr. Shramowiat, opined that Mrs. Sayre suffered cervical and right shoulder injuries that will cause her pain periodically for the rest of her life and will likely require further medical attention. (Notice of Removal Ex. B at 2.) Further, plaintiffs' counsel stated that based upon Dr. Shramowiat's indications, *"Ms. Sayre may have a need for surgical intervention* to remove the exostosis at the anterior acromion." (*Id.* (emphasis in original).) As for damages, plaintiffs' counsel contended that Mrs. Sayre "remains under the care of Dr. Shramowiat and has certainly endured a great amount of pain, suffering, inconvenience, annoyance and aggravation damages as the direct an [sic] proximate result of Mr. Pott's negligence." (*Id.*) Plaintiffs' counsel claimed that the experience had been a "nightmare" for the Sayres and "[n]o amount of money will ever restore Ms. Sayre's health to the level she enjoyed prior to this wreck." (*Id.* at 3.) Additionally, in the September 21, 1998 demand letter, plaintiff's counsel stated that "Ms. Sayre is forced to work and live, on a day to day basis, in pain" and noted that surgery was a possibility for Mrs. Sayre. (Notice of Removal Ex. C at 1.)

Third, there is evidence in the record concerning negotiations occurring after the Sayres filed suit in state court. On November 18, 1998, the defendants filed a notice of removal asserting that the amount in controversy exceeded $75,000. Five days later, the Sayres jointly submitted a demand of $74,500 to settle their claims against the defendants. They state that the reason for the increase was Mrs. Sayre's referral "to an orthopedic

doctor for an evaluation in order to determine whether or not surgery is appropriate." (Mot. to Remand Ex. C.) Westfield once again responded with a $30,000 counteroffer. The plaintiffs subsequently filed this motion to remand.

Reviewing the allegations of the complaint, the memoranda filed by the parties, the settlement negotiation history of this case, and the representations made by the parties during the negotiations, the Court concludes that the defendants have satisfied their burden of proof by establishing by a preponderance of the evidence that the amount in controversy in Mrs. Sayre's action exceeded $75,000. With regard to the pre-suit negotiations, the Court notes that Mrs. Sayre made two settlement offers that were well above the jurisdictional limit, both of which plaintiffs' counsel described as "fair." In addition, her counsel characterized the defendants' settlement offer as "woefully insufficient" and stated that "$30,000 does not nearly reflect the true value of Ms. Sayre's claim." (Notice of Removal Ex. C at 1.) Furthermore, plaintiffs' counsel's description of Mrs. Sayre's permanent injuries and loss of earning capacity suggest an amount of damages in excess of $75,000. As for the post-suit negotiations, Mrs. Sayre's referral to an orthopedic doctor bolsters the defendants' claim that the higher settlement figures more adequately reflect the amount in controversy at the time of removal. Based on this evidence, the Court finds that it is more likely than not that the amount in controversy in Mrs. Sayre's claim is greater than the jurisdictional limit.

The Court is unpersuaded by the plaintiffs' arguments that the defendants' rejection of their $60,000 settlement offer and the defendants' repeated offers of $30,000 are proof that the amount in controversy does not exceed the jurisdictional limit. First, in determining the amount in controversy, the Court looks to the potential judgment if the plaintiff were to prevail on the merits of the case as presented in the complaint at the time of removal, not at the amount that it would take to resolve the case through settlement. Compare Landmark Corp., 945 F.Supp. at 936–37 (stating that potential judgment determines amount in controversy), with Pl.'s Memo. in Supp. of Mot. to Remand at 4

("The bottom line is that this case can be settled today for less than $75,000.") (emphasis in original). Second, such an argument ignores the inherent nature of negotiations. Parties routinely offer and accept settlement amounts significantly below the total amount placed into controversy by the case in order to avoid the risks that accompany a trial. In determining their settlement figures, the parties calculate the probability of a plaintiff victory in connection with the potential damages that the plaintiff may recover at trial. Such calculations may result in substantial discounting and settlement figures below the jurisdictional amount even though the amount in controversy exceeds the statutory limit. Thus, it is entirely consistent that the amount in controversy exceed the jurisdictional requirement despite the fact that the parties are negotiating at levels below the limit.

Despite their arguments, the plaintiffs' post-removal settlement offer of $74,500— $500 below the statutory limit—does not prove that the action fails to satisfy the jurisdictional amount. To the contrary, such a settlement offer lends credence to the proposition that the amount in controversy at the time of removal actually exceeded the $75,000 threshold. "In order to allow for the hazards and cost of litigation, settlement offers routinely represent a discount from the damages plaintiffs will attempt to prove at trial." Mullins, 861 F.Supp. at 24 (discussing settlement offer of $45,000 as evidence of amount in controversy above $50,000 limit).

For all of these reasons, the Court finds by a preponderance of the evidence that the amount in controversy in Mrs. Sayre's claim exceeds the jurisdictional limit. Accordingly, the Court finds that it has subject matter jurisdiction over this controversy and denies her motion to remand.

### B. Mr. Sayre's Claim

Neither the plaintiffs nor the defendants have supplied any argument or evidence regarding the amount placed in controversy by Mr. Sayre's consortium claim. Upon review of the record, it is fair to conclude that Mr. Sayre's action is very much a secondary and less significant claim. Without any information regarding the extent of

Mr. Sayre's damages, the Court is unable to find by a preponderance of the evidence that his claim implicates an amount greater than $75,000. Thus, the Court cannot exert jurisdiction over his claim pursuant to 28 U.S.C. §§ 1332, 1441(a).

However, the Court may exert supplemental jurisdiction over Mr. Sayre's claim pursuant to 28 U.S.C. § 1367. Section 1367 provides in pertinent part:

> (a) Except as provided in subsections (b) and (c) ..., in any civil action of which the district courts have original jurisdiction, the district courts shall have original jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....
>
> (b) In any civil action of which the district courts have original jurisdiction. founded solely on section 1332 of this title, the district courts shall ·not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(a)-(b). The plain language of this statute clearly permits the Court to exercise supplemental jurisdiction over Mr. Sayre's claim. His cause of action arises out of the same automobile accident that injured his wife; thus, it is part of the same case or controversy as his wife's claim. Furthermore, although the Court's original jurisdiction. in this case is grounded solely in Section 1332, the plaintiffs originally brought their claims together, not pursuant to Rules 14, 19,

20, or 24 of the Federal Rules of Civil Procedure. ·

The Court is aware that the plain language of 28 U.S.C. § 1367 has the practical effect of legislatively superseding a portion of the Supreme Court's decision in *Zahn v. International Paper Co.* The Court is also aware of the inconsistent statements of intent in the legislative history of Section 1367. *See Lindsay v. Kvortek,* 865 F.Supp. 264, 272–76 (W.D.Pa.1994) (exploring § 1367's language and legislative history); Laura L. Hirschfeld, *The $50,000 Question: Does Supplemental Jurisdiction Extend to Claims Between Diverse Parties Which Do Not Meet § 1332's Amount–in–Controversy Requirement,* 68 TEMP. L. REV. 107, 126–34 (1995). In such situations, this Court is guided by the principle of statutory construction enunciated in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981): "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Id.* at 580, 101 S.Ct. 2524 (internal quotations omitted). Because the plain language of Section 1367 is unambiguous and the legislative intent unclear, this Court must assume that "Congress said what it meant and meant what it said." *Garza v. National Am. Ins. Co.,* 807 F.Supp. 1256, 1258· (M.D.La.1992). The Court concludes that Section 1367's plain language permits it to exercise supplemental jurisdiction over Mr. Sayre's claim.[5]

___ The Court's decision to exercise supplemental jurisdiction under Section 1367 is largely discretionary. *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir.1995). Subsection (c) of section 1367 provides:

---

5. The Court finds support for its conclusion in *Booty v. Shoney's, Inc.,* 872 F.Supp. 1524 (E.D.La.1995). In that case, the court determined that "Mr. Booty's loss of consortium claim is derivative of and closely related to his wife's claim. Therefore, the court has supplemental jurisdiction over his claim even though it does not meet the $50,000 requirement. This conclusion is mandated by the clear language of the

statute." *Id.* at 1527. *But see Griffin v. Dana Point Condominium Ass'n,* 768 F.Supp. 1299, 1302 (N.D.Ill.1991) (finding that application of supplemental jurisdiction is not appropriate when one spouse's claim exceeds jurisdictional limit and other spouse's consortium claim does not because it allows the "consortium" spouse to "piggyback" its way into federal court contrary to *Zahn* ).

The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

In this case, the Court believes that the equities weigh in favor of exercising supplemental jurisdiction over Mr. Sayre's cause of action. First, this action is a simple automobile accident case that does not raise any novel or complex issues of state law. Second, Mrs. Sayre's claim appears to predominate substantially in value over Mr. Sayre's claim. While Mrs. Sayre apparently has received extensive medical treatment, may require surgery and care in the future, and may suffer permanent injury, Mr. Sayre's claim seems to have been added only upon litigation. Third, maintaining both claims in one lawsuit furthers the interests of judicial economy, convenience, and fairness. *Cf. Shanaghan*, 58 F.3d at 110 (discussing factors that influence court's decision to invoke supplemental jurisdiction). Mr. and Mrs. Sayre's claims are inherently related and the Court can efficiently address the entire action in one case. The liability and causation witnesses for both claims will be the same and the additional testimony needed to establish damages for Mr. Sayre will be of minimal length. The Court concludes that exertion of supplemental jurisdiction in this case is proper.

### IV. Conclusion

The Court accordingly **DENIES** the plaintiff's motion to remand and **DIRECTS** the Clerk to send a copy of this **ORDER** to counsel of record and any unrepresented parties.