Allen **WEDDINGTON** and Kimberly **Weddington, Plaintiffs,**

v.

**FORD MOTOR CREDIT COMPANY, a Michigan Corporation, Defendant.**

No. Civ.A. 299–0297.

United States District Court, S.D. West Virginia, at Charleston.

July 21, 1999.

L. David Duffield, Chad S. Lovejoy, The Duffield Law Firm, Barboursville, WV, for plaintiffs.

Michael Chaney, Rita Massie Biser, Kay Casto & Chaney, PLLC, for defendant.

## ORDER

HALLANAN, Senior District Judge.

Now pending before the Court is Plaintiffs' Motion to Remand the case at hand to the Circuit Court of Mingo County, West Virginia. Plaintiffs contend that the potential sum of damages in controversy does not exceed the jurisdictional amount of $75,000, and therefore the Court can not entertain subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).[1] Defendant opposes Plaintiffs' request for remand, and has filed a Response with the Court contending that the amount in controversy exceeds the jurisdictional requirement of $75,000. Therefore, the only issue before the Court on the present motions is the disagreement as to the amount in controversy. Having reviewed said motions, as well as all related pleadings and relevant case law, the Court is prepared to issue its ruling.

---

1. 28 U.S.C. § 1332(a) & (a)(1) states that, "The District courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states."

Plaintiffs' claims against Defendant have their genesis in 1995 although their civil action was not filed until March 4, 1999. On April 9, 1999, Defendant filed a Notice of Removal to the United States District Court for the Southern District of West Virginia asserting that the Court has original jurisdiction over the above matter pursuant to 28 U.S.C. §§ 1331, 1332(a) & 1441(a)(b) & (c).[2] The case was subsequently removed and assigned to this Court.

On or about July 31, 1995, Plaintiffs, Allen and Kimberly Weddington, visited Moore Chrysler, located in Williamson, West Virginia, to inquire about purchasing a new motor vehicle. Plaintiffs conversed with certain Moore Chrysler representatives concerning the purchase of a 1995 Chrysler Sebring. While doing so, Plaintiffs also explored with said representatives, the possibility of trading-in their 1995 BMW to be used towards the purchase price of said 1995 Sebring. On or about August 5, 1995, Plaintiffs again visited Moore Chrysler and entered into a retail installment contract for the purchase of said 1995 Sebring for a total sales price of $37,792.80. Plaintiffs did not trade in their BMW as part of said contract. Moore Chrysler, through its employees, assisted Plaintiffs in obtaining financing for said Sebring through Defendant.

On or about August 21, 1995, Plaintiffs returned to Moore Chrysler, and by agreement with the dealership, entered into a new retail installment contract ("Second Contract") for the same 1995 Sebring, this time using the BMW as a trade-in. The finance manager for Moore Chrysler conducted the negotiation with Plaintiffs. Subsequent to the signing of the second contract, which thereby superseded the first contract, Plaintiffs were purportedly told that they would receive a copy of the second contract in the mail within the next few days. Upon receiving the second contract by mail, Plaintiffs promptly inspected the same and found to their apparent detriment, that the contract was not the same one they had originally signed on or about August 21, 1995, at the dealership (hereinafter "alleged forged contract"). The amount owing on the alleged forged contract was approximately $10,000 more than Plaintiffs previously agreed to pay in the transaction, and further, Plaintiffs contend their signatures on said contract are forged.

As a consequence of the increased debt created by the alleged forged contract, Plaintiffs refused to keep the 1995 Sebring and returned the car to Moore Chrysler stating that they were refusing to pay under the terms of the alleged forged contract. As a repercussion of Plaintiffs' failure to make timely payments under the terms of said contract, Defendant subsequently reported the car as "repossessed" on Plaintiffs' credit record and profiles, which resulted in the dissemination of alleged false information to be published with the National Credit Networks, local credit bureau affiliates, and or other entities.

On or about March 25, 1996, some seven months after Plaintiffs received the alleged forged contract. Defendant was informed that the contract Plaintiffs received via mail from Moore Chrysler was forged and thus, not valid. Plaintiffs allege that Defendant assured them by repeated representations that it would take the necessary actions to safeguard Plaintiffs' interests

---

**2.** Neither party disputes the Court's subject matter jurisdiction with regards solely to the domicile of each party in this case, however, included within Plaintiffs' complaint is an allegation that Defendant violated the Fair Credit Reporting Act, and thus the Court infers from said Complaint, although not explicitly stated by Plaintiffs, that Plaintiffs sought federal question jurisdiction under 28 U.S.C. § 1441(a) as well. Plaintiffs have advanced to the Court however, that after discussion with Defendant's counsel, Plaintiffs do not have a private cause of action under the Fair Credit Reporting Act, and thus have voluntarily dismissed that particular claim. Therefore, the Court finds federal question jurisdiction in this matter nonexistent.

and to correct the situation created or contributed to by the conduct of Defendant. Plaintiffs assert that although Defendant was notified of the alleged forgery, it refused to take the appropriate steps to remedy its dissemination of the alleged false and fraudulent information until or about some two years later, March 13, 1997.

As a consequence of Defendant's actions, Plaintiffs demand a rescission of their financing contract with Defendant, a non-specified amount in monetary damages, punitive damages and attorneys' fees for fraud, breach of contract, negligent supervision and/or training, negligence and civil conspiracy.[3] Plaintiffs claim that the damages include, without limitation, damages for mental anxiety, suffering, annoyance, aggravation and inconvenience, humiliation and other damages caused by Defendant. Plaintiffs are residents of Mingo County, West Virginia, and Defendant, Ford Motor Credit, is a Delaware corporation with its principal office located in Michigan. Therefore, the Court finds complete diversity in this matter. However, the sole question for the Court to decide is whether the nonspecified amount in controversy is sufficient to confer jurisdiction upon this Court.

 Courts and statutory law have declared that a defendant facing possible liability in excess of the monetary jurisdictional requirements shall be allowed to remove a case from state court, and unless it is evident that said liability will be less than the jurisdictional requirement, the removal will stand. 28 U.S.C. § 1332. However, the party seeking removal from state to federal court has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chem. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). This burden is usually met because the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); see also *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961) (holding that the general federal rule is that the complaint determines the amount in controversy and, consequently, federal jurisdiction). A problem arises in removal cases however, when the plaintiff's *ad damnum* clause does not specify the amount in damages sought to be recovered. To make matters worse, over the past several years there has been a divergence among the posture of many courts, in particular, several located in the Southern District of West Virginia, as to what test applies to the party bearing the burden of proving federal jurisdiction when the action includes a non-specified, or even a nonexistent monetary claim.[4] Unfortunately, neither the Court of Appeals for the Fourth Circuit nor the Supreme Court has adopted a specific standard for the courts to follow.

Several courts in the Southern District of West Virginia determine whether the

---

3. In their complaint, Plaintiffs originally filed five counts against Defendant. Count four was a claim against Defendant for violations of the Fair Credit Reporting Act which Plaintiffs voluntarily dismissed.

4. *Cline v. Matney,* 20 F.Supp.2d 977, 978 (S.D.W.Va.1998) (Haden, C.J.) (apply the "reverse legal certainty test" and holding that the amount in controversy was not established to a legal certainty to be less than the jurisdictional minimum); *Adkins v. Gibson,* 906 F.Supp. 345, 347 (S.D.W.Va.1995) (Haden, C.J.) (applying the "reverse legal certainty test" and holding that the amount in controversy has been proven to a legal certainty to

be less than the jurisdictional requirement); *Mullins v. Harry's Mobile Homes, Inc.,* 861 F.Supp. 22, 23 (S.D.W.Va.1994) (Faber, J.) (holding that "when the amount of damages" a plaintiff seeks is unclear, the courts often require the defendant to prove by a legal certainty that the claim meets the requisite jurisdiction amount): *Sayre v. Potts,* 32 F.Supp.2d 881 (S.D.W.Va.1999) (Goodwin, J.) (applying the preponderance of the evidence standard); *Whitney v. State Farm Mut. Auto. Ins. Co.,* No. 3:98–0241 at 3 (S.D.W.Va.1998) (Chambers, J.) (same); *Landmark Corp. v. Apogee Coal Co.,* 945 F.Supp. 932, 936 (S.D.W.Va.1996) (Copenhaver, J.) (same).

jurisdictional requirement is met when a plaintiff pleads a nonspecified amount in damages by applying the legal certainty test. *Cline v. Matney,* 20 F.Supp.2d 977 (S.D.W.Va.1998) (Haden, C.J.); *Adkins v. Gibson,* 906 F.Supp. 345 (S.D.W.Va.1995) (Haden, C.J.); *Mullins v. Harry's Mobile Homes, Inc.,* 861 F.Supp. 22 (S.D.W.Va. 1994) (Faber, J.). The United States Supreme Court created the legal certainty test some sixty-one years ago in *St. Paul Mercury Indemn. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In *Red Cab,* plaintiff filed a complaint in state court that was subsequently removed to federal court. *Red Cab,* 303 U.S. at 284, 58 S.Ct. 586. At the time of removal from state court, the complaint disclosed an amount in controversy requisite to the federal court's jurisdiction, however a subsequent amendment by plaintiff reduced the sum claimed to substantially less than that amount, necessitating the remand of the case to state court. *Id.* The Supreme Court granted *writ of certiorari* "because of the alleged conflict with [its] [other] decisions and with those of other federal courts." *Id.*

In a well reasoned opinion, the Supreme Court held that it has always been the intent of Congress to drastically restrict and "rigorously enforce" federal jurisdiction in controversies between citizens of different states. *Id.* In doing so, the High Court resolved the ongoing conflict by stating that, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 289, 58 S.Ct. 586. The Court continued:

> [F]rom the face of the pleadings, it is apparent, to a *legal certainty,* that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.* (emphasis added). However, the Court further opined that, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." *Id.* at 290, 58 S.Ct. 586.

From this language, the Court of Appeals for the Ninth Circuit, agreeing with the reasoning set forth in *Garza v. Bettcher Indus., Inc.,* 752 F.Supp. 753 (E.D.Mich. 1990), found that *Red Cab's* "legal certainty" test is applicable in only two types of cases: "(1) those brought in the federal court in which the plaintiff has filed a good faith complaint alleging damages in excess of the required jurisdictional minimum; and (2) those brought in the state court in which the plaintiff has filed any complaint alleging damages in excess of the required federal jurisdiction minimum." *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 402 (9th Cir.1996); *Sayre v. Potts,* 32 F.Supp.2d 881, 885 (E.D.W.Va.1999) (Goodwin, J.); see also *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1357 n. 8 (11th Cir.1996) (employing the preponderance of evidence standard and holding that the " 'legal certainty' test is derived from the situation where a plaintiff's state court prayer specifies damages in excess of the amount-in-controversy requirement"); *Gafford v. General Elec. Co.,* 997 F.2d 150, 160 (6th Cir.1993). The present action however, clearly does not fit into either of the above categories because the complaint in this case "does not state a specific damage amount." *Sayre,* 32 F.Supp.2d at 885.

■ Therefore, the Court looks to *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and its prodigy to determine what standard to apply. In *McNutt,* the Supreme Court held that the removing party must shoulder the burden "throughout the litigation that he is properly in court." *McNutt,* 298 U.S. at 188, 56 S.Ct. 780. If the allegations of jurisdictional facts advanced by the party bearing the burden are challenged by:

[H]is adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a *preponderance of evidence. Id.* at 189, 56 S.Ct. 780 (emphasis added). Therefore, in order for the party bearing the burden to meet the preponderance of the evidence standard and to establish jurisdiction upon removal, the removing party must show that it is "more likely than not that the amount in controversy exceeds the jurisdictional amount." *Landmark Corp. v. Apogee Coal Co.,* 945 F.Supp. 932, 936 (S.D.W.Va.1996) citing *Tapscott,* 77 F.3d at 1357 (finding that where a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer).[5] To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000. *Sayre,* 32 F.Supp.2d at 886. In *Sayre,* Judge Goodwin reasoned that the defendant seeking removal, must supply evidence to support his claim regarding the amount at issue in the case. *Id.* In so doing, the court considers the relief the plaintiff is requesting in the complaint at the time of trial, in addition to pre and post-judgment interest as required by law, *Landmark,* at 936, however not claims for interest and costs. *Id.* n. 3.[6] Moreover, the

Court may also rely upon the entirety of the facts and circumstances comprising plaintiff's damage claim. *Sayre,* at 886; see *Mullins v. Harry's Mobile Homes, Inc.,* 861 F.Supp. 22, 23 (S.D.W.Va.1994) (stating that a court may consider the complaint, removal petition and "other relevant matters in the file"). Finally, for purposes of determining subject matter jurisdiction, the court may also consider:

[T]he type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

*Watterson v. GMRI, Inc.,* 14 F.Supp.2d 844, 850 (S.D.W.Va.1997) (Staker, J.) (internal citations omitted).

■ In the present action, the *ad damnum* clause in Plaintiffs' complaint does not contain a demand for a specific monetary award. None-the-less, the complaint's allegations reflect, by a preponderance of the evidence a claim for damages in excess of the jurisdictional requirement. Plaintiffs request the following relief: (1) rescission of the installment contract; (2)

---

**5.** The Tapscott Court reasoned that the preponderance of evidence standard as compared to the legal certainty test strikes the proper balance for the plaintiff seeking to chose his forum with the defendant's desire to have the case removed to federal court. *Tapscott,* at 1356, 1357. The Tapscott Court concurred with the Gaffard Court's rationale that the legal certainty standard in cases where a specific amount of damages are not pled, "place[s] a daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy." *Id.* at 1357 citing *Gafford,* 997 F.2d at 159. Additionally, in *Sayre,* Judge Goodwin opined

that the preponderance standard was an "equitable resolution of the conflict between a defendant's right to a forum free from local bias and the limitations on diversity jurisdiction." *Sayre,* at 885.

**6.** *Landmark* also noted that " '[C]osts to be incurred subsequent to the filing of the complaint but prior to trial,' when they are alleged in the complaint, are properly considered as part of the value of the matter in controversy." *Landmark,* at 936 quoting *Broglie v. MacKay–Smith,* 541 F.2d 453, 455 (4th Cir.1976).

damages for mental anxiety, suffering, annoyance, aggravation, inconvenience, and humiliation; (3) punitive damages; and (4) attorneys' fees and costs. *Compl.* at 9.

First, Plaintiffs contend that rescission of the installment contract has no value, however, Defendant alleges that the deficiency balance on said contract and the value of loss to Defendant if the contract is rescinded to be approximately $16,000. Accordingly, as Defendant advances, a determination that the contract is to be rescinded precludes the plaintiffs from being responsible for the deficiency balance. The Court agrees and finds that this action has a measurable value of at least $16,000.

Second, Plaintiffs ask to be compensated for mental anxiety, suffering, annoyance, aggravation, inconvenience and humiliation. *Id.* While a judgment as to these particular pleas may vary significantly, the Court "is not required to leave its common sense behind." *Mullins,* 861 F.Supp. at 24. Using common sense, the Court can only imagine what an individual must go through when their credit report has been mistakenly tarnished. In this day and age credit has become the backbone of American Society. Without good credit, an individual is often foreclosed from making large purchases unless accompanied with a large sum of cash. Therefore, on the basis of these damages alone, the Court finds that it would not be unreasonable for a damage judgment to be entered in this case in excess of the jurisdictional requisite of $75,000.

Next, Plaintiffs make a demand for punitive damages. In support of this claim,

Plaintiffs allege that Defendant engaged in fraud for the purpose of protecting its business relationship with Moore Chrysler; that Defendant acted deliberately and fraudulently with regard to the dissemination of false information regarding the Plaintiffs over a two year period of time; and that Defendant did such actions in conspiracy with Moore Chrysler for the purpose of making plaintiffs pay more than the original contract terms. *Compl.* at 4–9.

■ West Virginia law generally permits an award of punitive damages in a case involving fraud. *Mullins,* at 24. Accordingly, Plaintiffs' claim for punitive damages must be added to their claim for compensatory damages in determining subject matter jurisdiction. *Id.* If in this case Plaintiffs are awarded punitive damages it is easy for the Court to fathom that the amount recovered could very well surpass the $75,000 jurisdictional requirement, especially in light of various West Virginia courts that have let stand awards of punitive damages that far exceed the compensatory damages to be recovered in a case. See *TXO Production Corp. v. Alliance Resources Corp.,* 187 W.Va. 457, 419 S.E.2d 870 (1992), aff'd, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *Hinerman v. Daily Gazette Co., Inc.,* 188 W.Va. 157, 423 S.E.2d 560 (1992). Using this rationale, the Court finds by a preponderance of the evidence that Plaintiffs' claims for damages can more than likely exceed the jurisdictional want for subject matter jurisdiction.[7]

---

7. It should further be noted that in *Mullins,* although Judge Faber applied the legal certainty test, the fact that punitive damages were requested was a significant factor in denying the motion to remand. *Mullins,* at 24. It also appears that Chief Judge Haden, who also employs the legal certainty test, finds that a plea for punitive damages weighs significantly in the outcome of a motion to remand when a specific demand for damages has not been sought. *Cline,* 20 F.Supp.2d at 977, *Adkins,* 906 F.Supp. at 345. *Cline* concerned a Defendant who sought removal of an insurance action wherein the plaintiff had sought compensatory damages that were apparently under the jurisdictional minimum, and unspecified punitive damages under the Unfair Claim Settlement Practices Act. The court in *Cline* ultimately determined that the jurisdictional minimum amount in controversy requirement had been satisfied. *Cline,* at 978–79. In doing so, the court distinguished *Cline* from its previous decision in *Adkins.* In *Adkins,* plaintiff had made only a minimal ($3,215.75) claim for monetary loss and did not request punitive damages. *Adkins,* at 345. As such, the Adkins court found the

■ Finally, as set forth in Plaintiffs' motion, they have already incurred attorneys' fees in this matter of $9,000. *Pls.['] Mot. Remand,* p. 7. As Defendant contends, this figure is likely to increase substantially considering the fact that said amount has been generated before discovery has begun. Additionally, these fees are required to be added to the value of the matter in controversy. *Landmark,* at 936.[8] In this case, the Court finds that the equities weigh in favor of exercising jurisdiction over this case. *Sayre,* at 890.

The Court therefore concludes that any realistic assessment of the record establishes the jurisdictional amount of $75,000, exclusive of interests and costs to be present, and that Defendant's burden of proving jurisdiction is met. Accordingly, Plaintiffs' Motion to Remand is hereby **DENIED.**

IT IS SO ORDERED.

---

jurisdictionally required amount in controversy to be absent, and accordingly granted plaintiff's motion to remand. *Id.* at 348.

8. Plaintiffs have claimed that their request for damages will not exceed the jurisdictional requirement of $75,000. However, an alleged request to stipulate by Defendant that recoverable damages are in fact less than $75,000 has been rejected by Plaintiffs' counsel. *Resp. of Def. to Pls.['] Mot. to Remand,* p. 2.